# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **HOLY LOVE MINISTRY,** | ) | **CASE NO.  1:11 CV 1256** |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **NATIONAL CREDIT UNION** | ) | |
| **ADMINISTRATION, et al.,** | ) | |
| | ) | |
| Respondents. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment filed by Respondents, National Credit Union Administration et al. (collectively referred to as "Respondents").  (Docket #41.)   Pursuant to Fed. R. Civ. P. 56, Respondents seek summary judgment as to the claims asserted by Petitioner, Holy Love Ministries ("Holy Love").

## Factual and Procedural Background

The Federal Credit Union Act, 12 U.S.C. § 1741 et seq., ("the Act") established the National Credit Union Administration ("NCUA") under the management of the NCUA Board and sets forth the powers and duties of the NCUA and the NCUA Board in relation to credit unions whose share accounts are insured by the National Credit Union Share Insurance Fund ("Insurance Fund").  The NCUA operates as both regulator/insurer for insured credit unions, and also as conservator/liquidating agent for insured credit unions when necessary.  These functions

are governed by separate statutory provisions and regulations.

As regulator/insurer, the NCUA conducts examinations of insured credit unions; administers the Insurance Fund; and, makes payment on insured shares from the Insurance Fund when federally insured credit unions are liquidated.  12 U.S.C. §§ 1756 and 1781 to 1785.  As conservator/liquidating agent, the NCUA Board steps into the shoes of the insured credit union, similar to a trustee in bankruptcy, and succeeds to "all rights, titles, powers, and privileges of the credit union . . . ."  12 U.S.C. § 1787(b).

If an insured federal credit union is insolvent, the NCUA must close and liquidate the credit union.  12 U.S.C. § 1787(a)(1)(A).  The NCUA Board, through the Liquidating Agent, makes an initial share insurance determination and payout based on the applicable regulations and account balances at liquidation.  12 C.F.R.§§ 745.200-745.203 and 745.0 to 745.13.  Account holders for whom all or any portion of an account is determined to be uninsured may request reconsideration with the Liquidating Agent and/or may appeal the Liquidating Agent's determination to the NCUA Board.  12 C.F.R. §§ 745.201 and 745.202.  After receiving a final determination from the NCUA Board, account holders can seek review under the Administrative Procedures Act in a United States District Court pursuant to 12 U.S.C. § 1787(d)(3).

**St. Paul Croatian Federal Credit Union**

On April 23, 2010, pursuant to 12 U.S.C. § 1787(h), the NCUA Board placed St. Paul Croatian Federal Credit Union ("St. Paul") into conservatorship following the discovery of fraud allegedly perpetrated by St. Paul's CEO.  (Docket #16-1, Pages 5 and 33.)  On April 26, 2013, St. Paul's members received notice of St. Paul's liquidation.  (Docket #16-1, Page 33.)  At the outset of the conservatorship, the Agent for the Conservator, Alonzo A. Swann III, the NCUA Regional Director at the time, implemented a share withdrawal limit of $5,000 per week.  (Id.)

One week later, upon learning of the scope of the alleged fraud, the NCUA Board liquidated St. Paul. The NCUA's Asset Management and Assistance Center acted as the Liquidating Agent. (Docket #16-1, Page 5.)

St. Paul Croatian Federal Credit Union ("St. Paul") was insured by the Insurance Fund. Accounts in a federally insured credit union, often referred to as shares, are insured to a maximum of $250,000.00. 12 U.S.C. § 1787(k)(5).

**Holy Love**

Holy Love is a not for profit ministry in North Ridgeville, Ohio. (Petition, Docket #1 at Paragraph 8.) Holy Love's accounts with St. Paul were set up by Joseph Plavac – an officer of Holy Love. Mr. Plavac was also a member of St. Paul's Board of Directors and, according to the NCUA's Motion for Summary Judgment and not disputed by Holy Love, is a former CEO of St. Paul. (Petition, Docket #1 at Paragraph 12; NCUA's Motion for Summary Judgment, Docket #42, at p. 10.) According to the Petition, at the time St. Paul was liquidated, Holy Love held a total of $1,752,148.82 in two different accounts with St. Paul (an operating account and a building account) with multiple members designated as signers on each account. (Petition, Docket #1 at Paragraphs 10-11.)[1]

The Liquidating Agent determined that, as a nonprofit corporation, Holy Love was entitled to the maximum of $250,000 in insurance coverage pursuant to 12 C.F.R. § 745.6, leaving an uninsured balance of $1,502,148.82. (Docket #16-1, Page 82-84.) Holy Love received a Certificate of Claim in Liquidation for that amount to enable Holy Love to share *pro*

---

[1] St. Paul's records list five separate account numbers for Holy Love. (Docket 16-1, Page 25.) Regardless of the number of accounts, the total shares at liquidation was $1,752,148.82.

*rata* in the proceeds of liquidation, if available, pursuant to 12 C.F.R. § 709.5(b)(6). (Id.)

In December 2010, Holy Love appealed the Liquidating Agent's determination to the NCUA Board, pursuant to 12 C.F.R. § 745.202. (Docket #16-1, Page 106-109.) The NCUA Board upheld the Liquidating Agent's determination that Holy Love was entitled to $250,000.00 in insurance pursuant to 12 C.F.R. § 745.6. (Docket #16-1, Page 3, Pages 13-19.) The NCUA Board denied Holy Love's appeal and also noted that the pre-liquidation claims raised by Holy Love were beyond the scope of the appeal and otherwise barred. (Id.) On June 17, 2011, Holy Love petitioned this Court for review under the Administrative Procedures Act, 12 U.S.C. § 1787(d)(3) and 12 C.F.R. § 745.203.

**Holy Love's Petition for Review**

As set forth in its Petition for Review, Holy Love alleges it held two different accounts with St. Paul, with multiple members designated as signers on each account, and alleges that it structured the accounts as it did with the belief that each of the signers was entitled to $250,00.00 in share insurance. (Docket #1, Petition, at Paragraphs 46-53.) Thus, Holy Love argues it is entitled to an additional $250,000.00 share insurance.

Holy Love alleges to have suffered monetary loss as a result of the NCUA Board's actions or inaction prior to and during the conservatorship of St. Paul. Holy Love argues that the NCUA failed to provide statutorily required notice of NCUA insurance coverage of member accounts;[2] failed to adequately monitor St. Paul prior to the conservatorship; and, that NCUA

---

[2]

The NCUA Rules and Regulations state that "**each insured credit union shall provide notice** to its members concerning NCUA insurance coverage of member accounts." 12 C.F.R. § 745.13 (emphasis added). Holy Love argues that St. Paul did not provide the required notice to Holy Love. However, as stated above, Holy Love's accounts with St. Paul were set up by Joseph Plavac – an officer of Holy Love. Mr.

-4-

Examiner Kim Paige and Interim Manager Joe Gojevic purposefully and wrongfully prevented Mr. Plavac from withdrawing money from Holy Love account(s) in the days immediately prior to the conservatorship.  (Docket #1, Petition.)  Further, Holy Love alleges that the $5,000.00 withdrawal freeze was applied to St. Paul members inconsistently and that certain account holders were contacted and assisted with restructuring their accounts prior to liquidation to maximize insurance coverage but Holy Love was not. (Id.)

Holy Love argues that the actions of the NCUA amount to fraud; that the NCUA failed to act in the best interests of its account holders, including Holy Love, during the conservatorship; that the NCUA should have withdrawn or should be removed as liquidating agent; that the NCUA Board's insurance determination was unlawful; and, therefore, that the NCUA is responsible for the losses suffered by Holy Love.  (Id.)

On May 29, 2013, Respondents filed their Motion for Summary Judgment. (Docket #41.) Respondents assert that the NCUA Board's insurance determination regarding Holy Love was not arbitrary or capricious, or otherwise contrary to law; that the Federal Credit Union Act, 12 U.S.C. § 1787(a)(1)(B), expressly provides for the NCUA Board's appointment as liquidating agent; and, that any pre-liquidation claims raised by Holy Love are jurisdictionally barred because they improperly seek money damages, sound in tort, are not properly raised in this proceeding, and are otherwise meritless.  (Docket #42, Motion for Summary Judgment.)

On July 22, 2013, Holy Love filed its Opposition to Respondents' Motion for Summary Judgment.  (Docket #47.)  On August 14, 2013, Respondents filed a Reply Brief.  (Docket #50.)

---

Plavac was also a member of St. Paul's Board of Directors and, according to the NCUA's Motion for Summary Judgment and not disputed by Holy Love, is a former CEO of St. Paul.  Therefore, any claim regarding notice is questionable.  See Petition at Paragraph 12.

-5-

**Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C).  The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 5(C)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a dispute is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**Discussion**

Pursuant to 12 U.S.C. § 1787(d)(3), the Court may review the NCUA Board's final determination regarding insurance coverage under the standards set forth in the Administrative Procedures Act, 5 U.S.C. § 706 ("APA").  The APA reads, in pertinent part, as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory

-6-

>provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>(1) compel agency action unlawfully withheld or unreasonably delayed; and
>(2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>(B) contrary to constitutional right, power, privilege, or immunity;
>(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>(D) without observance of procedure required by law;
>(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2)(A) and (2)(E).

An outcome is not arbitrary or capricious "when it is possible to offer a reasoned explanation [for it], based on the evidence." *Davis v. Ky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

Accounts with St. Paul were insured by the National Credit Union Share Insurance Fund. Accounts in a federally insured credit union are insured to a maximum of $250,000.00. 12 U.S.C. § 1787(k)(5). The accounts of a corporation, partnership, or unincorporated association engaged in any independent activity are insured up to $250,000.00 in the aggregate. 12 C.F.R. § 745.6. "The account records of the insured credit union shall be conclusive as to the existence of any relationship pursuant to which funds in the account are deposited and on which a claim for insurance coverage is founded." 12 C.F.R. § 745.2(c)(1).

Holy Love is a nonprofit corporation registered in the State of Ohio. St. Paul's records reflect Holy Love's accounts were accounts of a corporation, partnership, or unincorporated association engaged in an independent activity. The Liquidating Agent and the NCUA Board

-7-

relied on the records of St. Paul at the time of liquidation in determining Holy Love's insurance coverage. As stated in the NCUA Board's determination, "Legal entities, including non-profit corporations, are not eligible for joint account coverage, as joint accounts are only available to natural persons." NCUA regulations do not provide for additional insurance amounts in the event of multiple signatories on entity accounts. 12 C.F.R. § 745.6.

The aggregate balance in Holy Love's accounts at liquidation was $1,752,148.82. The Liquidating Agent determined Holy Love, as a non-profit corporation, was entitled to $250,000.00 in insurance, and provided Holy Love with a certificate of claim in liquidation for the uninsured balance of $1,502.148.82. The NCUA Board affirmed the Liquidating Agent's determination. Based upon a thorough review of the record in this matter, under the APA, the NCUA Board's final determination as to insurance coverage on Holy Love's accounts was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or contrary to law.

Holy Love's preliquidation claims are beyond the scope of this Court's review of the NCUA Board's insurance determination under the APA.

**Conclusion**

For the foregoing reasons, Respondents' Motion for Summary Judgment (Docket #42) is hereby GRANTED as follows:

The NCUA Board's final determination as to insurance coverage on Holy Love's accounts was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or contrary to law.

Holy Love's remaining claims are beyond the scope of this Court's review under the APA

and are, therefore, dismissed without prejudice.[3]

This case is hereby TERMINATED.

IT IS SO ORDERED.

           s/Donald C. Nugent
           DONALD C. NUGENT
           United States District Judge

DATED: October 11, 2013

---

[3] On August 20, 2013, pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b)(1), Holy Love filed a separate case entitled *Holy Love Ministry v. United States of America, et al.*, Case No. 1:13 CV 1830 (assigned to Judge Patricia A. Gaughan). Holy Love sets forth claims which are identical to those raised in this case, but beyond the scope of this Court's review of the NCUA Board's insurance determination as permitted under the APA. The Parties have not requested these cases be consolidated.